FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2022 MAR 29  AM 8: 05

MARGARET BOTKINS, CLERK

# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | **CRIMINAL COMPLAINT** |
| v. | Case Number: __22-MJ·19-F__ |
| **PETER JEREMY MARTIN, a/k/a James Delbert Libbey,** | **FILED UNDER SEAL** |
| Defendant. | |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

### COUNT ONE

On or about January 25, 2021, in the District of Wyoming, the Defendant, **PETER JEREMY MARTIN, a/k/a James Delbert Libbey**, willfully and knowingly made a false statement in an application for a passport with intent to induce and secure for his own use the issuance of a passport under the authority of the United States, contrary to the laws regulating the issuance of such passports and the rules prescribed pursuant to such laws, in that in such application for renewal by mail the defendant stated that his name was James Delbert Libbey, which statement he knew to be false.

In violation of 18 U.S.C. § 1542.

### COUNT TWO

On or about November 9, 2021, in the District of Wyoming, the Defendant, **PETER JEREMY MARTIN, a/k/a James Delbert Libbey**, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, an official criminal investigation conducted by the U.S. Department of State, did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations by falsely representing to Special Agents of the U.S. Department of State that the Defendant was James Delbert Libbey (year of birth 1941), when in truth and fact, the Defendant then and there knew he was not James Delbert Libbey.

In violation of 18 U.S.C. § 1001(a)(2).

### COUNT THREE

On or about January 25, 2021, in the District of Wyoming, the Defendant, **PETER JEREMY MARTIN, a/k/a James Delbert Libbey,** did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028(c)(ii), namely, passport fraud as charged in Count One, knowing that the means of identification belonged to another actual person.

In violation of 18 U.S.C. § 1028A(a)(1).

I further state that I am a Special Agent with the U.S. Department of State and that this complaint is based on the following facts:

*(See attached Sworn Statement)*

Continued on the attached sheet and made a part hereof.

Signature of Complainant
WAYNE H. CRAWFORD

Sworn to before me and subscribed by telephone,

| March 28, 2022 | at | Cheyenne, Wyoming |
|---|---|---|
| Date | | City and State |

HON. KELLY H. RANKIN
United States Magistrate Judge

Name & Title of Judicial Officer

Signature of Judicial Officer

2

## SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT
## SPECIAL AGENT WAYNE H. CRAWFORD
## U.S. v. PETER JEREMY MARTIN

1.      I am a Special Agent ("SA") of the Diplomatic Security Service (DSS), United States Department of State and have been so employed since January 2015. Prior to this, I was employed as a Consular Officer, adjudicating passport and visa applications. I am empowered to investigate violations of the laws of the United States involving the issuance of passports, visas, and identity documents utilized to transit international borders. As part of my official duties, I also investigate criminal acts relating to identity fraud as well as malfeasance of United States government employees involving the issuance of United States visas, possession or use of counterfeit or altered visas, and the unlawful solicitation of United States government employees to engage in the illegal issuance of United States visas. As a result of my training and experience as an DSS Special Agent, I know that it is a violation of 18 U.S.C. § 1542 and 18 U.S.C. § 1028A to fraudulently obtain and use another person's identity in order to apply for and subsequently use a U.S. passport, and it is a violation of 18 U.S.C. § 1001 to make materially false statements to a federal agent when questioned.

2.      The statements in this affidavit are based on my personal observations, training and experience, investigation of this matter, and information obtained from other agents, government employees and witnesses.  Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation.

3.      This Affidavit establishes probable cause to arrest **Peter Jeremy Martin, also known as James Delbert Libbey**, for passport fraud, false statements, and identity theft. More specifically:

1

- 18 U.S.C. § 1542 prohibits willfully and knowingly making any false statement in an application for passport with intent to induce or secure the issuance of a passport, either for his own use or the use of another, or willfully and knowingly using or attempting to use, or furnishing to another any passport the issue of which was secured in any way by reason of any false statement.

- 18 U.S.C. § 1001 prohibits the falsification, concealment, or cover up by any trick, scheme, or device a material fact, making any materially false, fictitious, or fraudulent statement or representation, or making or using any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

- 18 U.S.C. § 1028 prohibits several forms of possession, presentment, transfer, falsification and use of various forms of identification documents. Common examples of identification documents include driver's licenses and Social Security cards.

4.      On January 25, 2021, an individual purporting to be James Delbert Libbey (hereafter referred to as the "Subject") submitted Form DS-82, U.S. Passport Application renewal-by-mail application #685564236 in Greybull, Wyoming. Accompanying the application was Subject's previous U.S. passport book # 222358479 issued on April 21, 2007, in the identity of James Delbert Libbey born on ▓▓▓▓, 1941 in Nevada. The subject represented himself as a U.S. Citizen, swore under oath that the information on the application was true and the photograph attached to the passport application was a true likeness of him, and then signed the application. The subject's application was received by the National Passport Center (NPC) on February 16, 2021.

5.      The investigation reveals, that according to an Idaho death certificate, the real James Delbert Libbey was born on ▓▓▓▓, 1941, in Fallen (Fallon), Nevada and died on ▓▓▓ ▓, 1964 in Twin Falls, Idaho. The parents of the decedent are listed as ▓▓▓▓▓▓▓▓(Father) and ▓▓▓▓▓▓▓▓ (Mother).

6.      According to Nevada's Bureau of Vital Records Office, they only have a birth record on file for James Delbert Libbey born on ▓▓▓▓, 1941. Therefore, it appears that the ▓▓▓ ▓ 1941, date of birth listed on the Idaho death certificate, is the result of administrative error.

7.      The investigation reveals that the Subject has a Wyoming Driver's License in the name of James Delbert Libbey with DOB: ███ 1941 who lives at █████████ in Greybull, Wyoming (the "SUBJECT RESIDENCE").

8.      On November 9, 2021, I and DSS Special Agent Kelli Scott, observed the subject driving a 2019 Toyota 4 Runner enter a detached garage at the SUBJECT RESIDENCE. The subject exited the vehicle and entered the house. SA Scott and I interviewed the Subject in the SUBJECT RESIDENCE. His spouse, Heather Maser Libbey (nee Maser), was present.

a.      Upon initial contact, the Subject appeared at the door armed with a large revolver, in a sling holster at his hip. I introduced myself and SA Scott as coming in response to his repeated enquiries about the status of his passport application. The Subject complained about the delay in receiving his passport application, then went to the mailbox to check his mail. After retrieving his mail, he then returned to his front door and invited SA Scott and me into the house.

b.      The subject then called to his spouse, Heather Libbey, to come to the living room and join him there. He then removed his firearm, still in the holster, placed it on a chair and sat down in a chair at a table and invited agents to sit. I sat at the table between the Subject and his firearm and SA Scott remained standing in a position to observe the subject, Heather Libbey, and the firearm.

c.      I explained that, in order to complete the Subject's passport application, I needed to ask some biographical questions and confirm the information provided on the passport application form. The Subject said that he found this unusual, given that he had already been issued a passport twice, but stated that he understood. I and SA Scott then presented our credentials to the subject, identifying ourselves as Federal Agents.

d.      I then presented a copy of the Subject's DS-82 submitted on January 25, 2021.

The Subject confirmed that he prepared the DS-82, that all information was correct, and

that his signature was at the bottom of the document. I then asked the Subject what the

names of his parents were. He took some time answering, saying

"ummmm.... ████ ..James....and Helen ████ ." I then verbally gave an 18 U.S.C. §

1001 warning to the Subject.

e.      I asked the Subject to confirm his date of birth, and he again paused, looking up at

the ceiling, before stating that his birthdate was ████ 1941. I next asked where the

Subject was born, and he said he was born and lived for the first five years in Nevada but

had moved to Idaho before starting school. I asked the Subject the name of the high school

from which he graduated, and he again paused and said "it was so long ago, more than 40

years, and I don't remember."

f.      SA Scott observed behavior from Heather Libbey that she interpreted as Heather

Libbey attempting to quietly coach the subject with answers. SA Scott also observed

Heather Libbey keeping one hand in her purse, initially on her phone but then seemingly

searching for something else in her purse.

g.      The Subject asked why I was asking these questions, stating for a second time that

he had already received two passports. I replied that the problem was that his passport

application and his two previous passports were in the identity of a deceased person, and

that the true James Delbert Libbey had died in 1964.

h.      The Subject exhaled, looked up at the ceiling, and looked around the room. He

asked "Do I have to answer these questions?" I stated that the interview was voluntary,

that he was not in custody, and that he could ask us to leave at any time. For a third time

4

the Subject stated that "I have already been issued two passports." He then asked "what kind of trouble am I in? Should I talk to an attorney? It seems like you've already gotten me on the 1001 thing." I explained that he could of course contact an attorney and did not have to answer any questions, but that the agents could not provide any legal advice. The Subject pressed me on what kind of crime we were investigating. I said that, if he had not been truthful on his DS-82 then he had committed fraud. The Subject asked how long he could go to prison for, and I reiterated that agents were not there to provide legal advice.

i.       The Subject then said "well, I think this interview is over. I shouldn't answer any other questions."

9.       The investigation subsequently revealed that the Subject is in fact Peter Jeremy Martin.  I reviewed Idaho correction records and photos related to Peter Jeremy Martin, born on ▮▮▮▮▮▮▮▮ 1937, who was incarcerated at the Idaho State Penitentiary.  Those records revealed that Peter Jeremy Martin was convicted of and incarcerated for several felony crimes, including theft, armed robbery, burglary, attempted murder, reckless driving, assault, and prison escape from 1956 to 1967 in Arkansas and Wyoming.  Martin appears to have been paroled from the Idaho State Penitentiary in 1967 and subsequently disappeared from the public record after 1970, the year the Social Security Administration issued a new social security number in the name of James Delbert Libbey (who died in 1964).  I reviewed photos of Peter Jeremy Martin contained in the Idaho state prison records, as well as Driver's license and passport application photos for James Delbert Libbey, and I believe Peter Jeremey Martin is the same individual I interviewed at the SUBJECT RESIDENCE on November 9, 2021 as referenced above.

10.       The Michigan birth record for Peter Jeremy Martin indicates that his father's name is Donovan ▮▮▮▮▮▮.  A search of State Department passport records for James Delbert Libbey

5

revealed that he has a son named ████████████ born in 1977.  This suggests that the Subject gave his son the middle name (Donovan) of the Subject's real father.

## CONCLUSION

11.     Based on the foregoing, I respectfully submit that there is probable cause to believe that **Peter Jeremy Martin,** aka James Delbert Libbey, has committed violations of 18 U.S.C. § 1542, 18 U.S.C. § 1001, and 18 U.S.C. § 1028(a).  I therefore respectfully request that the attached warrant be issued authorizing the arrest of **Peter Jeremy Martin**, aka James Delbert Libbey.

**END OF SWORN STATEMENT**

## PENALTY SUMMARY

**DEFENDANT NAME:**   **PETER JEREMY MARTIN, a/k/a James Delbert Libbey**

**DATE:**   March 28, 2022

**INTERPRETER NEEDED:**   No

**VICTIM(S):**   Yes

**OFFENSE/PENALTIES:**

Ct: 1   **18 U.S.C. § 1542**
(False Statement in Application for Passport)

18 U.S.C. § 1542
15 Years Imprisonment
Up To  $250,000 Fine
Not more than 3 Years Supervised Release
$100 Special Assessment

Ct: 2   **18 U.S.C. § 1001(a)(2)**
(False Statement)

0-5 Years Imprisonment
Up To $250,000 Fine
3 Years Supervised Release
$100 Special Assessment

Ct: 3   **18 U.S.C. § 1028A(a)(1)**
(Aggravated Identity Theft)

2 Years Consecutive To Any Other Term Of Imprisonment
Up To $250,000 Fine
1 Year Supervised Release
$100 Special Assessment

TOTALS:   2-20 Years Imprisonment
Up To $,750,000 Fine
Up To 3 Years Supervised Release
$300 Special Assessment

**AGENT:**   Wayne H. Crawford, Department of State

**AUSA:**   Margaret M. Vierbuchen, Assistant United States Attorney

**ESTIMATED TIME OF
TRIAL:**                        1 to 5 days

**WILL THE GOVERNMENT
SEEK DETENTION IN THIS
CASE:**                         Yes

**ARE THERE DETAINERS
FROM OTHER
JURISDICTIONS:**                No